**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| LATONIA ALFRED, individually and on behalf of all others similarly situated,<br><br>v.<br><br>NEW DAY PERSONAL CARE SERVICES, INC. | **Case No. 6:25-cv-01533-RRS-DJA**<br>FLSA Collective Action<br><br>Judge Robert R. Summerhays<br><br>Magistrate Judge David J. Ayo |

## FIRST AMENDED COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Latonia Alfred brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act (FLSA).

2. New Day Personal Care Services, Inc. ("New Day") failed to pay Alfred and other hourly workers like her overtime as required by federal law.

3. Instead, New Day improperly classified Alfred and workers like her as independent contractors paid them at their same hourly rates, even when they worked more than 40 hours in a workweek.

4. This collective action seeks to recover the unpaid wages and other damages owed to Alfred and other hourly workers at New Day.

### JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because New Day's principal place of business is in this District.

7. New Day is headquartered in this District.

## PARTIES

8. **Plaintiff Latonia Alfred** is a natural person.

9. Alfred was, at all relevant times, an employee of New Day.

10. Alfred was an hourly-paid employee of New Day.

11. Alfred worked for New Day beginning in 2018 until March 2025.

12. Alfred seeks to represent a collective of similarly situated employees under 29 U.S.C. § 216(b) (the "FLSA Collective"). The FLSA Collective is defined as:

> **All persons currently or formerly employed by, or working on behalf of, New Day Personal Care Services, Inc. who were paid "straight time for overtime" at any point from three years prior from October 14, 2025, until judgment is entered.**

13. Throughout this Complaint, the FLSA Collective members are also referred to as the "Similarly Situated Workers."

14. **Defendant New Day Personal Care Services, Inc. ("New Day")** is a domestic corporation.

15. New Day has been served and appeared in this matter.

## COVERAGE UNDER THE FLSA

16. At all relevant times, New Day was an employer of Alfred within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

17. At all relevant times, New Day was an employer of the FLSA Collective members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

18. At all relevant times, New Day has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

19. During at least the last three years, New Day has had gross annual sales in excess of $500,000.

20. During at least the last three years, New Day was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

21. During at least the last three years, New Day has employed many workers, including Alfred and the FLSA Collective members, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

22. New Day employs many workers, including Alfred and the FLSA Collective members, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

23. The goods and materials handled, sold, or otherwise worked on by Alfred and other New Day employees and that have been moved in interstate commerce include, but are not limited to, medical equipment and supplies, as well as pharmaceuticals.

24. New Day treated Alfred as an employee and uniformly dictated the pay practices to which Alfred's was subjected.

25. New Day's misclassification of Alfred as an independent contractor does not alter Alfred's employee status for purposes of this FLSA action.

26. New Day treated the FLSA Collective as an employee and uniformly dictated the pay practices to which the FLSA Collective members were subjected.

27. New Day's misclassification of the FLSA Collective as an independent contractor does not alter the FLSA Collective members' employee status for purposes of this FLSA action.

## FACTS

28. New Day provides home health care services. New Day, About Us, https://newdaypersonalcare.com/about/ (last accessed Sept. 30, 2025).

29. New Day needs home health care workers to perform these services.

30. Without home health care workers, New Day could not provide home health care services.

31. While exact job titles and job duties may slightly differ, Alfred and the Similarly Situated Workers were subjected to the same or similar illegal pay practices for similar work.

32. Some of New Day's healthcare workers are employed by New Day.

33. New Day employed persons to perform the same work as its independent contractor workers in the same positions.

34. Many of the individuals who worked for New Day performing the same or substantially similar job duties as Alfred were classified as employees.

35. Many of the individuals who worked for New Day performing the same or substantially similar job duties as Alfred were misclassified by New Day as so-called independent contractors.

36. Regardless of whether they were classified as employees or independent contractors, New Day paid Alfred and the Similarly Situated Workers the same hourly rate for all hours worked, including those over 40 in a workweek.

37. Throughout her employment with New Day, Alfred was classified as an independent contractor.

38. The work Alfred performed is an essential part of New Day's core business.

39. During Alfred's employment with New Day and while she was classified as an independent contractor, New Day exercised control over all aspects of her job.

40. Alfred was not required to possess any unique or specialized skillset (other than that maintained by all other individuals working in her same job position) to perform her job duties.

41. During the time that Alfred worked with New Day, she worked exclusively for New Day.

42. New Day controlled all the significant or meaningful aspects of the job duties performed by Alfred.

43. New Day ordered the hours and locations Alfred worked, tools used, and rate of pay received.

44. Even though Alfred often worked away from New Day's offices without the presence of a direct New Day supervisor, New Day still controlled all aspects of Alfred's job activities by enforcing mandatory compliance with New Day's policies and procedures.

45. No real investment was required of Alfred to perform her job.

46. New Day determined Alfred's opportunity for profit and loss.

47. Alfred did not provide the equipment she worked with on a daily basis. New Day made the large capital investments in buildings, machines, equipment, tools, and supplies in the business in which Alfred works.

48. Alfred did not incur operating expenses like rent, payroll, marketing, and insurance.

49. Alfred was economically dependent on New Day during her employment.

50. New Day set Alfred's rate of pay and her work schedule.

51. New Day directly determined Alfred's opportunity for profit and loss, as Alfred's earning opportunity was based on the amount of time New Day scheduled her to work.

52. For the purposes of an unpaid overtime claim, very little skill, training, or initiative was required of Alfred to perform her job duties.

53. Indeed, the daily and weekly activities of Alfred and the Similarly Situated Workers were routine and largely governed by standardized plans, procedures, and checklists created by New Day.

54. Virtually every job function of the Similarly Situated Workers was pre-determined by New Day and/or its clients, including the equipment to use at a job site, the schedule of work, and related work duties.

55. Alfred and the Similarly Situated Workers were prohibited from varying their job duties outside pre-determined parameters.

56. Moreover, the job functions of Alfred and the Similarly Situated Workers were primarily manual labor/technical in nature that did not require a college education or other advanced degree.

57. For the purposes of an unpaid overtime claim, Alfred and the Similarly Situated Workers performed substantially similar job duties related to healthcare services.

58. Alfred performed routine manual and technical labor duties that were largely dictated by New Day and/or its clients.

59. Alfred was not employed by New Day on a project-by-project basis.

60. Alfred was not paid by New Day on a project-by-project basis.

61. All the Similarly Situated Workers performed the same or similar job duties and were subjected to the same or similar policies and procedures by which New Day dictated the day-to-day activities performed by each person. The Similarly Situated Workers also worked similar hours as Alfred and were denied overtime pay as a result of the same illegal pay practice.

62. Alfred was an hourly employee of New Day.

63. New Day never paid Alfred a salary.

64. New Day never paid Alfred on a fee basis.

65. New Day paid Alfred by the hour.

66. Alfred reported the hours she worked to New Day on a regular basis.

67. Alfred's hours are reflected in New Day's records.

68. New Day paid Alfred at the same hourly rate for all hours worked in a workweek.

69. New Day did not pay Alfred an overtime premium for all hours worked in excess of 40 in a workweek.

70. Instead, New Day paid Alfred "straight time"—that is, her regular hourly rate—for all overtime hours she worked.

71. Alfred normally worked more than 40 hours in a week.

72. For example, for the one-week pay period from December 29, 2024, to January 4, 2025, Alfred worked a total of 84.16 hours for New Day.

73. For all 84.16 hours, New Day paid Alfred at the same hourly rate, including all 44.16 overtime hours she worked.

74. Thus, rather than receiving time-and-a-half as required by the FLSA for all hours over 40 in a workweek, Alfred only received "straight-time" pay for her overtime hours worked.

75. This "straight-time-for-overtime" payment scheme violates the FLSA.

76. New Day was aware of the overtime requirements of the FLSA.

77. New Day nonetheless failed to pay certain hourly employees, such as Alfred, overtime for all hours worked over 40 in a workweek.

78. New Day's failure to pay overtime to these hourly workers was, and is, a willful violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

79. New Day's illegal "straight time for overtime" policy extends well beyond Alfred.

80. It is the "straight time for overtime" payment plan that is the "common policy or plan that violate[s] the law." *McDonald v. Ricardo's on the Beach, Inc.*, No. CV 11-93366 PSG (MRWx), 2013 WL 228334, at *2 (C.D. Cal. Jan. 22, 2013) (internal quotations omitted)); *see also*, *e.g.*, *Bursell v. Tommy's Seafood Steakhouse*, No. CIV.A. H-06-0386, 2006 WL 3227334, at *3 (S.D. Tex. Nov. 3, 2006) (certifying "straight time for overtime" claim for collective treatment); *Wellman v. Grand Isle Shipyard, Inc.*, No. CIV.A. 14-831, 2014 WL 5810529, at *5 (E.D. La. Nov. 7, 2014) (same).

81. New Day has paid many hourly workers according to the same unlawful scheme.

82. Any differences in job duties do not detract from the fact that these hourly workers were entitled to overtime pay.

83. The workers impacted by New Day's "straight time for overtime" scheme should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

## CAUSE OF ACTION–VIOLATIONS OF THE FLSA

84. Alfred incorporates all other allegations.

85. By failing to pay Alfred and the FLSA Collective members overtime at 1.5 times their regular rates, New Day violated the FLSA. 29 U.S.C. § 207(a).

86. New Day owes Alfred and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

87. New Day owes Alfred and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

88. New Day knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay overtime compensation to Alfred and the FLSA Collective members.

89. Because New Day knew, or showed reckless disregard for whether, its pay practices violated the FLSA, New Day owes these wages for at least the past three years.

90. New Day's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

91. Because New Day's decision not to pay overtime was not made in good faith, New Day also owes Alfred and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

92. Alfred and the FLSA Collective members are entitled to their unpaid wages under the FLSA, including overtime wages in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

## RELIEF SOUGHT

Alfred prays for judgment against New Day as follows:

a. For an order certifying a collective action for the FLSA claims;

b. For an order finding New Day liable for violations of federal wage laws with respect to Alfred and the FLSA Collective members;

c. For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Alfred and the FLSA Collective members;

d. For a judgment awarding attorneys' fees to Alfred and the FLSA Collective members;

e. For a judgment awarding costs of this action to Alfred the FLSA Collective members;

f. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Alfred and the FLSA Collective members; and

b. For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: ***/s/ Matthew S. Parmet***

**Matthew S. Parmet**
LA Bar Roll # 32855
**PARMET LAW PC**
2 Greenway, Ste. 250
Houston, TX 77046
phone 713 999 5200
matt@parmet.law

**Kenneth St. Pé**
Louisiana Bar Roll 22638
**ST. PÉ LAW**
700 St. John St., Ste. 401

Lafayette, LA 70501
Telephone: (337) 534-4043
Telecopier: (337) 534-8379
kds@stpelaw.com

**Attorneys for Plaintiff**