# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | |
|---|---|
| LATONIA ALFRED, individually and on behalf of all others similarly situated, | **Case No. 6:25-cv-01533-RRS-DJA** |
| | FLSA Collective Action |
| v. | |
| | Judge Robert R. Summerhays |
| NEW DAY PERSONAL CARE SERVICES, INC. | Magistrate Judge David J. Ayo |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF COLLECTIVE CERTIFICATION

Respectfully submitted,

**PARMET LAW PC**
Matthew S. Parmet
LA Bar # 32855
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone 713 999 5200
matt@parmet.law

**ST. PÉ LAW**
Kenneth St. Pé
Louisiana Bar Roll 22638
700 St. John St., Ste. 401
Lafayette, LA 70501
Telephone: (337) 534-4043
Telecopier: (337) 534-8379
kds@stpelaw.com

**Attorneys for Plaintiffs**

## TABLE OF CONTENTS

A.    SUMMARY ............................................................................................1

B.    FACTUAL BACKGROUND ...................................................................3

   1.    New Day's home care workers had similar job duties and pay. .......................... 3

   2.    New Day's healthcare workers' jobs did not require unique skill or experience. .. 4

   3.    New Day's home care workers did not risk their own investments or have any opportunity for profit or loss from New Day's operations. .................................. 4

   4.    New Day's independent contractors share a common employment experience. .. 5

C.    ARGUMENT & AUTHORITIES ...............................................................6

   1.    *Swales* provides for early certification based on the facts of the case. ................... 6

   2.    Collective certification is warranted. ................................................................. 8

   3.    The *Lusardi* factors support certification of a collective action. ......................... 10

      3.1.    The factual and employment settings of the Plaintiff and putative collective members are the same. ............................................................... 11

      3.2.    There are no individualized defenses. ......................................... 12

      3.3.    The fairness and procedural considerations support certification of a collective action. ................................................................................. 13

   4.    Liability is not resolved at the notice stage. The relevant issue is whether merits questions can be answered collectively. ............................................................ 13

   5.    Employment status is a merits-based analysis and is premature at this stage...... 14

   6.    Independent contractor misclassification cases are well-suited for certification. 16

   7.    Certification furthers the *Hoffman La-Roche* goal of judicial economy............... 18

D.    NOTICE & CONSENT PROCEDURE..................................................... 19

   1.    The production of contact information is routine in FLSA collective actions.... 20

   2.    Putative Collective Members should receive notice electronically. ................... 21

      2.1.    Email notice should be provided to putative collective members. ............... 21

      2.2.    Text notice should be provided to putative collective members................... 22

E.    CONCLUSION ................................................................................... 23

TABLE OF EXHIBITS

| Ex. | Document |
|---|---|
| A | Declaration of Robert Doucet, New Day Director |
| B | Home Care Job Posting |
| C | New Day Website |
| D | Declaration of Latonia Alfred |
| E | Pay Stub for Latonia Alfred |
| F | Declaration of Verges Anderson |
| G | Pay Stub for Verges Anderson |
| H | Declaration of Sheresse Senegal |
| I | *New Day Personal Care Services, Inc. v. Su*, Original Complaint |
| J | WHD Field Assistance Bulletin 2025-4, https://www.dol.gov/sites/dolgov/files/WHD/fab/fab2025-4.pdf |
| K | Declaration of Matthew S. Parmet |

TABLE OF AUTHORITIES

## Cases

*Barron v. Sterling Sugars Sales Corp.*, No. 6:21-CV-03741, 2022 WL 1571233 (W.D. La. May 17, 2022) ............................................................................................................... 7

*Beall v. Tyler Techs., Inc.*, No. Civ. A. 2-08-CV-422, 2009 WL 3064689 (E.D. Tex. Sept. 23, 2009) .............................................................................................................. 20

*Belt v. P.F. Chang's China Bistro, Inc.*, No. 18 Civ. 3821, 2020 WL 3829026 (E.D. Pa. Jul. 8, 2020) .............................................................................................................. 21

*Black v. Settlepou, P.C.*, No. 3:10-cv-1418-K, 2011 WL 609884 (N.D. Tex. Feb. 14, 2011) .... 21

*Botello v. COI Telecom, L.L.C.*, No. SA-10-CV-305-XR, 2010 WL 5464824 (W.D. Tex. Dec. 30, 2010) .............................................................................................................. 17

*Bryant v. Act Fast Delivery of Colorado, Inc.*, No. 14-CV-00870-MSK-NYW, 2015 WL 3929663 (D. Colo. June 25, 2015) ....................................................................................... 15, 16

*Carter v. XPO Last Mile, Inc.*, No. 16-cv-01231-WHO, 2016 WL 5680464 (N.D. Cal. Oct. 3, 2016) .............................................................................................................. 14

*Case v. Danos and Curole Marine Contrs., L.L.C.*, Nos. 14-2775, 14-2976, 2015 WL 1978653 (E.D. La. May 4, 2015) ................................................................................................ 22

*Clifton v. Famous Bourbon Mgmt. Grp., Inc.*, No. CV 20-2764, 2022 WL 22936958 (E.D. La. Dec. 6, 2022) ......................................................................................................... 18

*Cortez v. Casa do Brasil, LLC*, 646 F.Supp.3d 847 (S.D. Tex. 2022) ....................................... 14

*Cotton-Thomas v. Volvo Grp. N. Am., LLC*, No. 3:20-CV-113, 2021 WL 2125003 (N.D. Miss. May 25, 2021) ......................................................................................................... 11

*Davis v. Westgate Planet Hollywood Las Vegas, LLC*, No. Civ. A. 2:08-CV-00722-RCJ-PAL, 2009 WL 102735 (D. Nev. Jan. 12, 2009) ......................................................................... 20

*Dearmond v. Alliance Energy Servs., L.L.C.*, No. 17-2222, 2017 WL 3173553 (E.D. La. Jul. 25, 2017) .............................................................................................................. 22

*Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510 (W..D. Tex. 2015) ............................ 20

*Edwards v. Multiband Corp.*, Civ. No. 10-2826 (MJD/JJK), 2011 WL 117232 (D. Minn. Jan. 13, 2011) ......................................................................................................... 17

*Escobar v. Rameilli Gp., L.L.C.*, No. 16-15848, 2017 WL 3024741 (E.D. La. Jul. 7, 2017) .... 22

*Fontenot v. McNeil Industrial, Inc.*, No. 4:17-cv-3113, 2018 WL 5724863 (D. Neb. Sept. 19, 2018) ................................................................................................................ 17

*Garcia-Alvarez v. Fogo De Chao Churrascaria (Pittsburgh) LLC*, No. 4:21-CV-00124, 2022 WL 2119542 (E.D. Tex. June 13, 2022) ............................................................................ 14

*Gayle v. Harry's Nurses Registry, Inc.*, No. 07 Civ. 4672 (CPS)(MDG), 2009 WL 605790 (E.D.N.Y. Mar. 9, 2009) .............................................................................................. 17

*Geiger v. Z-Ultimate Self Defense Studios LLC*, C.A. No. 14-cv-00240-REB-NW, 2015 WL 1090181 (D. Colo. Mar. 10, 2015) .............................................................................. 17

*Gilbert v. Citigroup, Inc.*, No. 08-0385 SC, 2009 WL 424320 (N.D. Cal. Feb. 18, 2009) ........ 15

*Hansen v. Total Screen Sols., Inc.*, No. 2:13-cv-00242, Doc. 96 (S.D. Tex. May 27, 2014) ....... 17

*Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358 (M.D. Ala. 1999) .......................................... 16

*Harris v. Express Courier Int'l, Inc.*, No. 5:16-cv-05033, 2016 WL 5030371 (W.D. Ark. Sept. 19, 2016) ................................................................................................................................ 17

*Harrison v. DelGuerico's Wrecking & Salvage, Inc.*, 305 F.R.D. 85 (E.D. Pa. 2015) ................. 17

*Hernandez v. Apache Corp.*, No. 4:16-cv-03454, Min. Entry granting Motion to Certify Class (S.D. Tex. Sept. 8, 2017) ................................................................................................. 17

*Hodzic v. Fedex Package Sys., Inc.*, No. 15-956, 2016 WL 6248078 (W.D. Pa. Oct. 26, 2016) . 17

*Houston v. U.R.S. Corp.*, 591 F.Supp.2d 827 (E.D. Va. 2008) ................................................ 18

*In re Penthouse Exec. Club Comp. Litig.*, 10 Civ. 1145(NRB), 2010 WL 4340255 (S.D.N.Y. Oct. 27, 2010) ...................................................................................................................... 17

*Jackson v. Synergies3 Tec Svcs., LLC*, No. 4:19-cv-00178-SRC, 2019 WL 5579514 (E.D. Mo. Oct. 29, 2019) ...................................................................................................................... 17

*Jaso v. Bulldog Conn. Specialists LLC*, No. 2:15-cv-269, Memo & Order on Pls' Mtn. for Cond. Cert. [ECF No. 17] (S.D. Tex. Oct. 15, 2015) ............................................................... 22

*Jones v. Yale Enf't Servs., Inc.*, No. 14-2831, 2015 WL 3936135 (E.D. La. Jun. 26, 2015) ..... 22

*Kibodeaux v. Wood Group Prod. and Consulting Servs., Inc.*, Civ. A. No. 4:16-CV-3277, 2017 WL 1956738 (S.D. Tex. May 11, 2017) ................................................................................. 16

*Kilmon v. Saulsbury Industries, Inc.*, No. 7:17-cv-00099-RAJ-DC, 2017 WL 7052328 (W.D. Tex. Dec. 13, 2017) ...................................................................................................................... 7

*Knox v. Jones Gp.*, 208 F.Supp.3d 954 (S.D. Ind. 2016) ........................................................ 21

*Krueger v. New York Tel. Co.*, No. Civ. A. 93 CIV. 0178, 1993 WL 276058 (S.D.N.Y. Jul. 21, 1993) ................................................................................................................................ 16

*Labrie v. UPS Supply Chain Sols., Inc.*, No. C08-3182 PJH, 2009 WL 723599 (N.D. Cal. Mar. 18, 2009) ........................................................................................................................... 17

*Lagunas v. La Ranchera, Inc.*, No. CV H-22-17, 2023 WL 5511198 (S.D. Tex. Aug. 25, 2023) ................................................................................................................................ 18

*Lee v. ABC Carpet & Home,* 236 F.R.D. 193 (S.D.N.Y. 2006) .............................................. 18

*Lemus v. Burnham Painting & Drywall Corp.*, No. 2:06-cv-01158, 2007 WL 1875539 (D. Nev. Jun. 25, 2007) ................................................................................................................ 18

*Lemus v. Burnham Painting and Drywall Corp.*, No. 2:06-cv-01158-RCJ-PAL, 2007 WL 1875539 (D. Nev. Jun. 25, 2007) ................................................................................................. 15

*Lewis v. ASAP Land Exp., Inc.*, C.A. No. 07-2226-KHV, 2008 WL 2152049 (D. Kan. May 21, 2008) ................................................................................................................. 18

*Lima v. Int'l Catastrophe Sols., Inc.*, 493 F.Supp.2d 793 (E.D. La. 2007) .............................. 18

*Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987) ......................................................6, 11

*Mahrous v. LKM Enterps., LLC*, C.A. No. 16-10141, 2017 WL 2730886 (E.D. La. Jun. 26, 2017) ................................................................................................................. 22

*Marissa Torres, v. Chambers Protective Services, Inc.*, No. 5:20-CV-212-H, 2021 WL 3419705 (N.D. Tex. Aug. 5, 2021) ................................................................................. 18

*May v. E & J Well Svc., Inc.* C.A. No. 14-cv-00121-RBJ, 2014 WL 2922655 (D. Colo. Jun. 27, 2014) ................................................................................................................. 17

*McCaffrey v. Mortgage Sources, Corp.*, No. 08-2660-KHV, 2009 WL 2778085 (D. Kan. Aug. 27, 2009) ................................................................................................................. 17

*McGhee v. TOMS KING, LLC*, 2:19-cv-01470-RJC, 2021 WL 1176097 (W.D. Pa. Mar. 29, 2021) ................................................................................................................. 21

*Meseck v. TAK Comms., Inc.*, No. 10-965, 2011 WL 1190579 (D. Minn. Mar. 28, 2011) ....... 15

*Montoya v. S.C.C.P. Painting Contractors, Inc.*, Civ. No. CCB-07-455, 2008 WL 554114 (D. Md. Feb. 26, 2008) ................................................................................................. 18

*Mooney v. Aramco Servs. Co.*, 54 F.3d 1207 (5th Cir. 1995) ................................................. 18

*Ornelas v. Hooper Homes, Inc.*, No. 12-cv-3106 (JAP), 2014 WL 7051868 (D.N.J. Dec. 12, 2014) ................................................................................................................. 17

*Parrish v. Premier Directional Drilling, L.P.*, No. 5:16-cv-00417-DAE, ECF No. 28 (W.D. Tex. Oct. 14, 2016) ................................................................................................. 17

*Parrish v. Premier Directional Drilling, L.P.*, No. 5:16-cv-00417-DAE, ECF No. 30 (W.D. Tex. Nov. 7, 2016) ................................................................................................. 17

*Prejean v. O'Brien's Resp. Mgmt., Inc.*, Nos. 12-1045, 12-1716, 12-1533, 2013 WL 5960674 (E.D. La. Nov. 6, 2013) ........................................................................... 17

*Putman v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264 (S.D. Iowa 2011) ........................................ 17

*Putnam v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264 (S.D. Iowa 2011) ........................................ 15

*Quinteros v. Sparkle Cleaning, Inc.*, 532 F.Supp.2d 762 (D. Md. 2008) ................................ 18

*Razak v. Uber Techs., Inc.*, No. 16-573, 2016 WL 5874822 (E.D. Pa. Oct. 7, 2016) .............. 17

*Reyes v. Tex. EZPawn, L.P.*, No. CIV.A. V-03-128, 2007 WL 101808 (S.D. Tex. Jan. 8, 2007)13

*Rodriguez v. Stage 3 Separation, LLC*, No. 5:14-cv-603-RP, ECF No. 57 (W.D. Tex. Mar. 16, 2015) ................................................................................................................. 21

*Rogers v. 12291 CBW, LLC*, No. 1:19-CV-00266, 2022 WL 19976339 (E.D. Tex. Mar. 31, 2022) ................................................................................................................. 18

*Roussell v. Brinker Intern., Inc.*, 441 Fed. Appx. 222 (5th Cir. 2011) ................................... 18

*Sandoz v. Cingular Wireless LLC*, 553 F.3d 913 (5th Cir. 2008)............................................. 18

*Scott v. Bimbo Bakeries, USA, Inc.* No. 10-3154, 2012 WL 645905 (W.D. Pa. Feb. 29, 2012) . 17

*Scovil v. FedEx Ground Package Sys., Inc.*, 811 F.Supp.2d 516 (D. Me. 2011) ........................ 15

*Sealey v. EmCare, Inc.*, No. 2:11-cv-00120 (S.D. Tex. Mar. 28, 2012).................................... 17

*Segovia v. Fuelco Energy LLC*, No. 17-cv-1246, 2021 WL 2187956 (W.D. Tex. May 28, 2021) ...........................................................................................................................10, 11, 12, 13

*Snively v. Peak Pressure Control, LLC*, 314 F. Supp. 3d 734 (W.D. Tex. 2018) ...................11, 13

*Sperling v. Hoffman-La Roche*, 110 S. Ct. 482 (1989) ............................................................ 19

*Sterling v. Greater Houston Transportation Co.*, No. CV H-20-910, 2021 WL 2954663 (S.D. Tex. July 14, 2021) ..................................................................................................................... 18

*Swales v. KLLM Transport Servs., LLC*, 985 F.3d 430 (5th Cir. 2021).............................passim

*T.S. by & through P.O. v. Burke Found.*, 521 F. Supp. 3d 691 (W.D. Tex. 2021) ........................ 7

*Tamez v. BHP Billiton Petroleum (Americas), Inc.*, No. 5:15-cv-330-RP, 2015 WL 7075971 (W.D. Tex. Oct. 5, 2015) .......................................................................................................... 17

*Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012 (S.D. Iowa 2016)...................................... 17

*Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095 (10th Cir. 2001)......................................... 10

*Thompson v. Peak Energy Svcs. USA, Inc.*, No. 13-0266, 2013 WL 5511319 (W.D. Pa. Oct. 4, 2013) ....................................................................................................................................... 22

*Torres v. Chambers Protective Services, Inc.*, No. 5:20-CV-212-H, 2021 WL 3419705 (N.D. Tex. Aug. 5, 2021) ........................................................................................................................11, 12

*Trottier v. FieldCore Servs. Solutions, LLC*, No. 2:20-CV-186, 2022 WL 658765 (N.D. Tex. March 4, 2022) ................................................................................................................................... 12

*Vega v. Point Security, LLC*, No. A-17-CV-049-LY, 2017 WL 4023289 (W.D. Tex. Sept. 13, 2017) ......................................................................................................................................... 22

*Verma v. 3001 Castor, Inc.*, No. CV 13-3034, 2016 WL 6962522 (E.D. Pa. Nov. 29, 2016).... 17

*Westbrook v. Advanced Solids Control, LLC*, No. 2:14-cv-131, Doc. 22 (S.D. Tex. Jan. 5, 2015)17

*Westfall v. Kendle Intern., CPU, LLC*, No. 1:05-cv-00118, 2007 WL 486606 (N.D. W.Va. Feb. 15, 2007)........................................................................................................................................ 18

*White v. Integ. Elec. Techs., Inc.*, CA Nos. 11–2186, 12–359, 2013 WL 2903070 (W.D. La. Jun. 13, 2013) ................................................................................................................................... 21

*White v. Integ. Elec. Techs., Inc.*, No. 11-2186, 12-359, 2013 WL 2930370 (E.D. La. Jun. 13, 2013)........................................................................................................................................ 22

*Whitlow v. Crescent Consulting, LLC*, 322 F.R.D. 417 (W.D. Okla. 2017) ........................14, 17

*Wood v. Sundance Prof. Svcs., LLC*, No. 08-2391-JAR, 2009 WL 484446 (D. Kan. Feb. 26, 2009) ......................................................................................................................................... 18

*Young v. Energy Drilling Co.*, 534 F. Supp. 3d 720 (S.D. Tex. 2021).....................................8, 9

**Statutes**

29 U.S.C. § 216........................................................................................................ 18

## A.    SUMMARY

New Day home care workers are the most important and essential employees for New Day's core business of providing home care services. New Day knew long ago it would have to pay these workers overtime if they were classified as employees. *See* Ex. A, Doucet decl., at ¶ 6. To try to get around paying overtime wages as required under federal law, New Day misclassified them as independent contractors. So New Day instead manufactured this independent contractor scheme to justify paying all these healthcare workers "straight time for overtime." This practice violates the Fair Labor Standards Act (FLSA).

Although this case is in its early days, the Fifth Circuit recognizes that notice to putative FLSA collective members is "justified when the pleadings and only preliminary discovery show sufficient similarity between the plaintiffs' employment situations." *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 441 (5th Cir. 2021). This is such a case. There is already ample evidence to support conditional certification.

New Day admits that all its home care workers are classified as independent contractors, paid by the hour, and paid straight time for overtime:

> All of the New Day home care providers are engaged and paid as 1099 independent contractors pursuant to independent contractor agreements between New Day and each home care worker. New Day home care workers are paid an agreed hourly rate and are not paid overtime wages for hours worked in excess of 40 hours per week.

Ex. A, Doucet decl., at ¶ 7. Not only are all these workers classified as independent contractors and paid straight time, but their entire employment experience is similar they all:[1]

- Performed home care work for "New Day's client's;"

---

[1] *See infra* § B.

- 1 -

- Worked within Louisiana in Acadia, Evangeline, Iberia, Lafayette, St. Landry, St. Martin, and/or Vermillion Parishes;

- Worked with New Day clients who were either infirm elderly or who had other physical and/or mental impairments;

- Worked pursuant to independent contractor agreements;

- Were subject to the same skill and educational requirements;

- Had to follow New Day's instructions to complete their jobs;

- Had the same opportunity for profit or loss relative to New Day; and

- Invested (or did not invest) similar economic resources as compared to New Day.

This similarity among Plaintiffs and the putative collective have already formed the very basis of New Day's motions to stay and its motion to consolidate.

Indeed, the DOL already found the putative collective was subject to the same pay scheme, which it found violated the FLSA, and assessed a penalty against New Day in favor of Plaintiffs and the putative collective. Ex. I, New Day Compl., at ¶ 47. Before that could be enforced, however, the DOL ceased all enforcement efforts under the 2013 Final Rule, including against New Day, while considering whether to rescind the rule. Ex. I, WHD Bulletin, at *2.

Plaintiffs therefore seek to these allow similarly situated coworkers—other New Day home care workers who were treated as independent contractors and paid straight time for overtime—to receive notice of this collective action and stop the statute of limitations from running on their valuable back wage claims.

Based on this evidence, certification of this matter is warranted, and notice of this collective action should issue to putative collective members.

B.    FACTUAL BACKGROUND

1.    **New Day's home care workers had similar job duties and pay.**

"New Day Personal Care Servcies offers non-medical home care ...." Ex. C, New Day Website, at *2; *see* Ex. I, New Day Compl., at ¶ 46. New Day provides these services to infirm, elderly, and physically and mentally impaired individuals. Ex. A, Doucet decl., at ¶ 8. These individuals are on Medicaid programs. *Id.* at ¶ 16. New Day provides these services across seven parishes in Lousiana. *Id.* at ¶ 5. To provide its home care services, New Day has home care workers. *Id.* at ¶ 7. These workers perform services on behalf of New Day "at the homes of New Day clients." Ex. I, New Day Compl. at ¶ 42.

All of the New Day home care workers are staffed by New Day to "New Day's clients." Ex. A, Doucet decl., at ¶ 8.[2] The services provided by New Day's home care workers to New Day's clients "include general companionship, assisting the client with dressing, grooming, and eating, and may include limited assistance with housekeeping tasks." *Id.* According to New Day, these home care workers' job duties all included "Activities of Daily Living ('ADLs') and Instrumental Activities of Daily Living ('IADLs'). ADLs include essential self-care taks such as bathing, dressing, eating, toileting, transferring, and continence, while AIDLs involve more complex activities that support independent living, such as managing mediations, handling finances, meal preparation, housekeeping, shopping, and transportation." *Id.* at ¶ 10.

"All of the New Day home care [workers] are engaged and paid as 1099 independent contractors ..." *Id.* at ¶ 7. "All of the New Day home care are [workers] engaged and paid ... pursuant to independent contractor agreements between New Day and each home care

---

[2] New Day also refers to its clients as its "customers." *See id.* at ¶ 16.

worker." *Id.* All of the New Day home care workers are paid an hourly rate. *Id.* All of the New Day home care workers are "not paid overtime wages for hours worked in excess of 40 hours per week." *Id.*

### 2. New Day's healthcare workers' jobs did not require unique skill or experience.

New Day's home care workers are not required to have any unique skill, a degree, or experience to perform their job duties outside of those held by any other home care worker. Ex. B, Job Posting, at *1. Indeed, they are not even required to have a high school diploma or any other degree or certification. *Id.*; Ex. D, Alfred decl, at ¶ 18; Ex. F, Anderson decl., at ¶ 18; Ex. H, Senegal decl., at ¶ 17.  The home care workers performed job functions that were not unique or specialized, and involved labor that was manual in nature. Ex. D, Alfred decl, at ¶¶ 12-13; Ex. F, Anderson decl., at ¶¶ 12-13; Ex. H, Senegal decl., at ¶¶ 11-12; Ex. B, Job Posting, at *1. Each New Day client had a binder which set forth the tasks and instructions for each client. Ex. D, Alfred decl, at ¶¶ 16-17; Ex. F, Anderson decl., at ¶¶ 16-17; Ex. H, Senegal decl., at ¶¶ 15-16. They did the tasks and worked the schedule assigned by New Day. Ex. D, Alfred decl, at ¶ 20; Ex. F, Anderson decl., at ¶ 20; Ex. H, Senegal decl., at ¶ 19.

### 3. New Day's home care workers did not risk their own investments or have any opportunity for profit or loss from New Day's operations.

New Day's home care workers made no significant monetary investment to do their work. Ex. D, Alfred decl, at ¶ 20; Ex. F, Anderson decl., at ¶ 20; Ex. H, Senegal decl., at ¶ 19. They did not have business entities, phone lines, office space, employees, or business insurance. Ex. D, Alfred decl, at ¶ 21; Ex. F, Anderson decl., at ¶ 21; Ex. H, Senegal decl., at ¶ 20. New Day or its clients would provide the equipment the healthcare workers utilized. Ex. D, Alfred decl, at ¶ 14; Ex. F, Anderson decl., at ¶ 14; Ex. H, Senegal decl., at ¶ 13. New Day

was responsible to provide work, and the amount the healthcare workers made was dependent solely on the number of hours they worked. Ex. D, Alfred decl, at ¶ 15; Ex. F, Anderson decl., at ¶ 15; Ex. H, Senegal decl., at ¶ 14.

New Day marketed to the public though its webpage and Facebook. Ex. D, Alfred decl, at ¶ 23; Ex. F, Anderson decl., at ¶ 23; Ex. H, Senegal decl., at ¶ 22; Ex. C, New Day webpage; Ex. I, New Day Compl. at ¶ 46. New Day is unambiguous that all home care workers were "New Day's clients" and customers. Ex. A, Doucet decl., at ¶¶ 8, 16. New Day's home care workers were only "responsible for the physical care and emotional support of our [New Day's] clients." Ex. B, Job Posting. New Day's home care workers did no advertising and had no responsibility to get clients. Ex. D, Alfred decl, at ¶ 21; Ex. F, Anderson decl., at ¶ 21; Ex. H, Senegal decl., at ¶ 20. It is New Day, and not its home care workers, that was solely responsible for "market[ing] its services to the public." Ex. I, New Day Compl., at ¶ 44.

### 4.    New Day's independent contractors share a common employment experience.

In all, New Day's so-called independent contractors all performed home care work. They were all subject to the same policies and procedures. They were all paid by the hour. And they were all paid straight time for all hours worked. They had a common employment experience in every relevant way.

Indeed, the DOL investigated New Day, concluding that it misclassified its home care workers as independent contractors and wrongfully withheld overtime pay from them. Ex. I, New Day Compl., at ¶ 48. The DOL found New Day owed these workers a total of $923,690.40 in backwages for the prior two years. *Id.* However, prior to final action against New Day, the DOL suspended its enforcement action due to political considerations. Ex. I, WHD Field Bulletin. Nevertheless, the DOL's findings—insofar as they demonstrate New Day

implemented a company-wide pay scheme that it found violated the FLSA—are instructive as to the putative collective's common employment experience with New Day.

**C.     ARGUMENT & AUTHORITIES**

**1.     *Swales* provides for early certification based on the facts of the case.**

Whether an FLSA action is ripe for collective certification is a question that varies depending on the facts of the case. Even where formal discovery has not been undertaken, a case may be certified early on where—as here—the available evidence shows that the putative collective is similarly situated.

Prior to the Fifth Circuit's decision in *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430 (5th Cir. 2021), the method used by the majority of district courts in the Fifth Circuit for determining whether to certify an FLSA collective action was the two-tiered approach expressed in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). *See Mooney*, 54 F.3d at 1213-14. In *Swales*, the Fifth Circuit found *Lusardi*'s approach should not be automatically applied. 985 F.3d at 440. "Instead of adherence to *Lusardi*, or any test for 'conditional certification,' a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" *Id.* at 441. The purpose of this analysis is to determine "early in the case, whether merits questions can be answered collectively." *Id.* at 442. In other words, the Fifth Circuit explained that when the facts and legal arguments relevant to proving the Plaintiff's claims are the same facts and legal arguments relevant to proving the putative collective members' claims, certification should be granted. *Id.* And, in those cases where "the plaintiffs all have the same job description and the allegations revolve around the same aspect of that job," certification should be granted. *See id.* at 441-42 (rejecting the idea that "a district court will … need mountains of discovery to

decide whether notice is appropriate" in such a case).

Under this analysis, the court may even determine **no court-supervised discovery is necessary** to certify the putative collective. *Barron v. Sterling Sugars Sales Corp.*, No. 6:21-CV-03741, 2022 WL 1571233, at *2 (W.D. La. May 17, 2022) (Hanna, Mag.J.) (granting collective certification) ("In this case, the plaintiffs supported their complaint with declarations and stated that **discovery is not necessary** to determine an appropriate definition of similarly situated workers." (emphasis added)); *see also T.S. by & through P.O. v. Burke Found.*, 521 F. Supp. 3d 691, 695 (W.D. Tex. 2021) ("[C]ourts can either find Plaintiffs to be similarly situated based on the pleadings and only preliminary discovery and approve notice or order further discovery to determine whether notice is warranted." (internal quotation omitted)).

Moreover, in this case, Plaintiffs allege they and other home care workers for New Day were all classified as independent contractors and paid a day rate, instead of overtime when working over 40 hours in a workweek. That violation, if true, would constitute a per se violation of the FLSA, and alleged differences in the proposed collective are not material. As one court explained regarding an alleged per se violation:

> [P]urported dissimilarities between members of [the] proposed class are irrelevant because of common scheme or policy alleged affects all hourly employees paid straight time for overtime. In sum, the alleged FLSA violations in this case do not turn on the nature of the work performed…. Because Plaintiff alleges that the compensation scheme is in of itself a violation of the FLSA, no further factual inquiry into the job duties of each putative class member is necessary.

*Kilmon v. Saulsbury Industries, Inc.*, No. 7:17-cv-00099-RAJ-DC, 2017 WL 7052328, at *3 (W.D. Tex. Dec. 13, 2017).

In such a case—like this one—*Swales* does not lead to any different standard or result, because the plaintiff's allegations do "not depend on the employees' specific job duties or

where the employee worked." *Young v. Energy Drilling Co.*, 534 F.Supp.3d 720, 725 (S.D. Tex. Apr. 20, 2021) (rejecting that *Swales* would require "further discovery" for conditional certification in the face of alleged per se FLSA violations).

In this case, the evidence already available and the nature of Plaintiffs' allegations establish that the proposed collective is similarly situated. Plaintiff's motion for collective certification is due to be granted.

**2.    Collective certification is warranted.**

Certification is "justified when the pleadings and … preliminary discovery show sufficient similarity between the plaintiffs' [and the putative collective's] employment situations." *Swales*, 985 F.3d at 441-42.

As *Swales* indicates, this case is ideal for certification. The putative collective members performed the same job duties, had a similar employment experience, and allege wages owed from a similar pay practice for the work they performed for New Day. Plaintiffs and the putative collective members: [3]

- Worked for New Day;

- Performed work for New Day's client's;

- Worked within Louisiana in Acadia, Evangeline, Iberia, Lafayette, St. Landry, St. Martin, and/or Vermillion Parishes;

- Worked with New Day clients who were either infirm elderly or who had other physical and/or mental impairments;

- Worked as home care workers;

- Had the same job duties assisting New Day's clients with ADLs and IADLs;

- Were classified as independent contractors;

---

[3] *See supra* § B.

- Worked for New Day pursuant to independent contractor agreements;

- Were subject to the same skill and educational requirements;

- Had to follow New Day's instructions to complete their jobs;

- Were subject to the same skill and educational requirements;

- Had the same opportunity for profit or loss relative to New Day;

- Invested (or did not invest) similar economic resources as compared to New Day;

- Were paid by the hour; and

- Were not paid overtime compensation for hours worked over 40 in a week.

Evidence thus shows that Lorenzen "is similarly situated to other employees who were subjected to the same pay practice." *Young*, 534 F. Supp. 3d at 725. The material facts with respect to proving Plaintiffs' claims are the same material facts relevant to proving putative collective members' claims. Thus, "merits questions can be answered collectively," and this case will not involve the "highly individualized inquiry into each potential opt-in's circumstances" feared by *Swales*, 985 F.3d at 442.

Similarly, the legal issues relevant to Plaintiffs' claims are the same legal issues relevant to the claims of the putative collective members.  For instance, some of the legal issues relevant to the Plaintiffs' and putative collective members' claims are: (1) whether Plaintiffs and the putative collective members were misclassified as independent contractors and (2) whether they are exempt from overtime compensation under the FLSA. These common questions can be resolved on a collective basis because the facts and evidence are the same for the Plaintiffs and the putative collective members. Thus, the liability question as to whether New Day's policy of classifying home care workers as independent contractors and paying

them straight-time for all hours worked violates the FLSA can be resolved on a collective basis.

In light of the similarities between Plaintiffs and the putative collective members, collective certification should be granted.

### 3. The *Lusardi* factors support certification of a collective action.

The two steps of the *Lusardi* approach are the "notice stage" and the "decertification stage." *Id.* at 1216. *Lusardi*'s first step, or "conditional certification," "involves 'an initial "notice stage" determination' that proposed members of a collective action are similar enough to receive notice of the pending action." *Swales*, 985 F.3d at 436 (quoting *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)). This initial determination was often based on minimal evidence, such as "the pleadings and any affidavits" and "typically results in 'conditional certification' of a representative class." *Mooney*, 54 F.3d at 1214. *Lusardi* step two occurred "[a]t the conclusion of discovery (often prompted by a motion to decertify)." *Swales*, 985 F.3d at 437 (internal quotation omitted). At decertification, the operative inquiry is "whether the named plaintiffs and opt-ins are 'similarly situated' and may therefore proceed to trial as a collective. If the court finds that the opt-ins are not sufficiently similar to the named plaintiffs, it must dismiss the opt-in employees, leaving only the named plaintiff's original claims." *Id.* (internal quotations omitted).

While *Swales* eliminates mandatory adherence to the two-step process under *Lusardi*, it nevertheless maintains the same "similarly situated" standard. *See Segovia v. Fuelco Energy LLC*, No. SA-17-CV-1246-JK, 2021 WL 2187956, at *7 (W.D. Tex. May 28, 2021) ("Although *Swales* brings step-two of *Lusardi* to the forefront of FLSA collective actions, it does not alter the meaning of 'similarly situated' as honed and considered through judicial decision since

the phrase first appeared undefined in the statute.").

Because *Swales* did not alter the question of when a putative collective is "similarly situated," courts have continued to use factors from *Lusardi* to determine whether employees are "similarly situated" with respect to the alleged violations. *See Segovia,* 2021 WL 2187956, at *7; *see also*, *e.g.*, *Torres v. Chambers Protective Services, Inc.*, No. 5:20-CV-212-H, 2021 WL 3419705, at *3 n.3 (N.D. Tex. Aug. 5, 2021) (citing post-*Swales* cases that still use the *Lusardi* factors); *Segovia v. Fuelco Energy LLC*, No. 17-cv-1246, 2021 WL 2187956, at *10 (W.D. Tex. May 28, 2021) (applying the *Lusardi* factors post-*Swales*). Those factors are: "(1) the disparate factual and employment settings of the proposed plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each proposed plaintiff; and (3) fairness and procedural considerations." *Lusardi*, 118 F.R.D. at 359. Each of these factors will be addressed in turn.

### 3.1.    The factual and employment settings of the Plaintiff and putative collective members are the same.

The first factor "assesses the opt-in plaintiffs' job duties, geographic location, supervision, and salary to determine if the potential opt-ins are similarly situated." *Snively v. Peak Pressure Control, LLC*, 314 F. Supp. 3d 734, 739 (W.D. Tex. 2018). Collective members do not have to hold identical employment to be similarly situated. Rather, plaintiffs "must show a 'demonstrated similarity' among the purported [collective] members, as well as a 'factual nexus' that binds the [collective] members' claims together such that hearing the claims in one proceeding is fair to all parties and does not result in an unimaginable trial of individualized inquiries." *Cotton-Thomas v. Volvo Grp. N. Am., LLC*, No. 3:20-CV-113, 2021 WL 2125003, at *2 (N.D. Miss. May 25, 2021).

Here, Plaintiffs and the putative collective members are all home care workers.

Moreover, Plaintiffs and the putative collective members were paid an hourly wage. Further, Plaintiffs and the putative collective members were uniformly denied overtime compensation due to New Day's policy of classifying home care workers as independent contractors exempt from the FLSA. Therefore, Plaintiffs and the putative collective members had the same job position, performed the same duties and responsibilities, and were subject to the same independent contractor classification policy.

The facts and employment conditions for Plaintiffs and the putative collective members are identical. Accordingly, this factor supports granting Plaintiffs' motion.

### 3.2.    There are no individualized defenses.

Second, courts look to whether the defendant's defenses are so individualized that it is inefficient or unmanageable to proceed with a representative collective. *Trottier v. FieldCore Servs. Solutions, LLC*, No. 2:20-CV-186, 2022 WL 658765, at *8 (N.D. Tex. March 4, 2022). Even though a "defense may require specific factual inquiries about each Plaintiff," when the defendant asserts the defense against each plaintiff, "collective treatment is less problematic." *Segovia*, 2021 WL 2187956, at *10. Further, "to the extent there are individual defenses that apply to specific Plaintiffs or categories of Plaintiffs," the court may weigh whether "such defenses carry less weight than the global defenses and the similarities of the Plaintiffs …. Even if Defendant must pose an inquiry to each of the [individual] Plaintiffs, the Court may determine that doing so in a collective trial is no more difficult than in individual trials." *Segovia*, 2021 WL 2187956, at *11; *see also Torres*, 2021 WL 3419705, at *7 (finding the need to assess by sub-group does not "sufficiently individualize defenses to prevent efficient collective action"). Ultimately, "the district court has the discretion to determine whether the potential defenses would make the [collective] unmanageable." *Reyes v. Tex. EZPawn, L.P.*, No.

CIV.A. V-03-128, 2007 WL 101808, at *5 (S.D. Tex. Jan. 8, 2007).

Here, there are no individualized defenses. Like Plaintiffs, all putative collective members were classified as independent contractors and did not receive overtime compensation for hours worked over 40 in a week. Further, Plaintiffs and the putative collective members performed the same job duties. Thus, there are no unique defenses applicable to some putative collective members but not applicable to others. This factor supports granting Plaintiffs' Motion.

### 3.3.    The fairness and procedural considerations support certification of a collective action.

Finally, courts examine whether notice would facilitate the primary purposes of FLSA collective actions "(1) to lower costs to the plaintiffs through the pooling of resources, and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arise from the same alleged activity." *Snively*, 314 F. Supp. 3d at 743.

Here, New Day confirms there are many other home care workers that were similarly denied overtime compensation for hours worked over 40 in a week. A collective action will promote the benefits of the FLSA by allowing all individuals with the same claim to pursue them in one proceeding. This factor supports granting Plaintiffs' motion.

### 4.    Liability is not resolved at the notice stage. The relevant issue is whether merits questions can be answered collectively.

Some employers attempt to defeat collective action certification by arguing the merits of the case rather than asserting that the claims of the plaintiff and putative collective members are dissimilar. However, "the similarly situated determination is not 'an opportunity for the court to assess the merits of [any] claim by deciding factual disputes or making credibility determinations." *Segovia*, 2021 WL 2187956, at *7. Consideration of the merits "is

inappropriate at the notice stage." *Cortez v. Casa do Brasil, LLC*, 646 F.Supp.3d 847, 856 (S.D. Tex. 2022).

Indeed, *Swales* made clear that the courts should not make a liability finding at the certification stage, stating that there should be "[n]o judicial thumbs (or anvils) on the scale" related to the merits of the case at the certification stage. 985 F.3d at 436. Instead, the issue for certification is simply "whether merits questions can be answered collectively." *Id*. at 441-442. "Though *Swales* directs district courts to consider the merits of an action at the outset, the focus of the inquiry is … not whether a plaintiff 'will ultimately prevail in proving all the elements of the alleged FLSA violation[,]' but whether the merits of the proposed collective's case can be decided collectively." *Garcia-Alvarez v. Fogo De Chao Churrascaria (Pittsburgh) LLC*, No. 4:21-CV-00124, 2022 WL 2119542, at *5 (E.D. Tex. June 13, 2022)).

In the present case, there abundant evidence that Plaintiffs and the putative collective members are similarly situated pursuant to the FLSA. As such, the Court should now grant Plaintiffs' motion and authorize the notice to be sent to the the putative collective members.

**5.    Employment status is a merits-based analysis and is premature at this stage.**

Likewise, New Day may also argue that Plaintiffs has not met the economic realities test to show home care workers are misclassified as independent contractors. That argument goes to the merits of the case. Courts regularly recognize that there is an inadequate record at the certification stage to apply economic realities factors and these factors go to the ultimate issues, not whether notice should issue under the lenient similarly-situated analysis.[4] Here,

---

[4] *E.g.*, *Whitlow v. Crescent Consulting, LLC*, 322 F.R.D. 417, 421 (W.D. Okla. 2017) ("The undersigned agrees with those courts that have concluded the economic realities inquiry is appropriate at step two of the *ad hoc* approach, that is in addressing a motion for decertification."); *Carter v. XPO Last Mile, Inc.*, No. 16-cv-01231-WHO, 2016 WL 5680464, at *5 (N.D. Cal. Oct. 3, 2016) ("If that were the test, no independent contractor misclassification

Plaintiffs has shown, *inter alia*: (a) New Day controlled putative collective members; (b) New Day set the rates of pay; and (c) no unique skill was required. *See* § B.

*Swales* has not altered this analysis. Courts routinely find that the issue of whether a worker was improperly classified as an independent contractor goes to the merits of the case and is not at issue during the notice stage—where this case is now. *See, e.g., Bryant v. Act Fast Delivery of Colorado, Inc.*, No. 14-CV-00870-MSK-NYW, 2015 WL 3929663, at *3 (D. Colo. June 25, 2015). As one court stated in granting conditional certification over the employer's invitation to consider the economic realities test and purported individualized circumstances of the collective members:

> The Defendants appear to misconstrue the role of the Court at this juncture.

---

case could be certified under [the] FLSA…. Whether there are **materially** significant differences is best tested at the "second step" of the FLSA certification process." (emphasis in original)); *Prejean v. O'Brien's Resp. Mgmt., Inc.*, Nos. 12-1045, 12-1716, 12-1533, 2013 WL 5960674, at *7-8 (E.D. La. Nov. 6, 2013) ("[S]uch an inquiry [under the economic realities test] is better addressed at the decertification stage after discovery has occurred[.]"); *Scovil v. FedEx Ground Package Sys., Inc.*, 811 F.Supp.2d 516, 519 (D. Me. 2011) ("I will have to deal with the economic realities factors conclusively when I determine ultimately whether the drivers are employees or independent contractors, but the question for me now is simpler: whether the drivers in the proposed class are similarly situated."); *Putnam v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264, 274 (S.D. Iowa 2011) ("Defendants also urge the Court to look to the 'economic realities' of the working relationship…. Making a determination, at this time, … pursuant to the 'economic realities' test, would … improperly delve into the merits of Plaintiffs' claim."); *Meseck v. TAK Comms., Inc.*, No. 10-965, 2011 WL 1190579, at *6 (D. Minn. Mar. 28, 2011) ("Courts in this district and elsewhere consistently hold that such potential defenses and individualized inquiries should not prevent conditional certification at the notice stage and are more appropriately addressed through a decertification motion."); *Gilbert v. Citigroup, Inc.*, No. 08-0385 SC, 2009 WL 424320, at *4 (N.D. Cal. Feb. 18, 2009) ("Defendants' concern about individualized inquiries does not require the Court to deny conditional certification…. Under the two-stage certification procedure, Defendants can present this evidence and make these arguments as part of a motion to decertify the class once discovery is complete."); *Lemus v. Burnham Painting and Drywall Corp.*, No. 2:06-cv-01158-RCJ-PAL, 2007 WL 1875539, at *5 (D. Nev. Jun. 25, 2007) ("The fact intensive inquiries concerning whether the plaintiffs are independent contractors or employees … and … are sufficiently similarly situated to maintain the class are more appropriately decided after notice has been given, the deadline to opt in has passed, and discovery has closed.").

> As noted, the Court does not weigh evidence or resolve factual disputes at the first stage of certification. Nor does the Court apply the economic realities test to the individual circumstances of the Plaintiffs or potential opt-in plaintiffs. Instead, it simply considers whether sufficient allegations have been made, supported by affidavits or declarations, to show that there are individuals "similarly situated" to the named plaintiffs.

*Id.*; *see also Kibodeaux v. Wood Group Prod. and Consulting Servs., Inc.*, Civ. A. No. 4:16-CV-3277, 2017 WL 1956738, at *3 (S.D. Tex. May 11, 2017) (explaining the economic realities test argument is a merits-based argument, and courts are not to engage in merits-based analysis at the notice stage of a collective action).

This is because "even if Plaintiffs' claims turn out to be meritless or, in fact all Plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in the case." *See Krueger v. New York Tel. Co.*, No. Civ. A. 93 CIV. 0178, 1993 WL 276058, at *2 (S.D.N.Y. Jul. 21, 1993); *see also Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 365 (M.D. Ala. 1999) ("[S]ubsequent discovery may reinforce or undermine th[e] finding [that the collective is similarly situated.]"). Any argument as to whether the home care workers are employees versus independent contractors or would be exempt from the FLSA should thus be rejected, because such arguments go to the merits of this case.

### 6. Independent contractor misclassification cases are well-suited for certification.

Courts in this Circuit have routinely found allegations of misclassification as independent contractors to be a common policy or plan for purposes of conditional

certification.[5] Courts throughout the nation have reached the same conclusion.[6] This remains

---

[5] *E.g.*, *Hernandez v. Apache Corp.*, No. 4:16-cv-03454, Min. Entry granting Motion to Certify Class (S.D. Tex. Sept. 8, 2017) (all day rate independent contractors, regardless of position); *Parrish v. Premier Directional Drilling, L.P.*, No. 5:16-cv-00417-DAE, ECF No. 28, at *15 (W.D. Tex. Oct. 14, 2016), *adopted by* ECF No. 30 (W.D. Tex. Nov. 7, 2016) (day rate independent contractor directional drillers); *Tamez v. BHP Billiton Petroleum (Americas), Inc.*, No. 5:15-cv-330-RP, 2015 WL 7075971, at *6 (W.D. Tex. Oct. 5, 2015) (day-rate independent contractors, regardless of job position); *Westbrook v. Advanced Solids Control, LLC*, No. 2:14-cv-131, Doc. 22 (S.D. Tex. Jan. 5, 2015) (centrifuge technicians); *Hansen v. Total Screen Sols., Inc.*, No. 2:13-cv-00242, Doc. 96 (S.D. Tex. May 27, 2014) (solids control technicians); *Prejean v. O'Brien's Resp. Mgmt., Inc.*, Nos. 12-1045, 12-1716, 12-1533, 2013 WL 5960674 (E.D. La. Nov. 6, 2013) (day-rate oil spill workers); *Sealey v. EmCare, Inc.*, No. 2:11-cv-00120 (S.D. Tex. Mar. 28, 2012) (certified registered nurse anesthetists); *Botello v. COI Telecom, L.L.C.*, No. SA-10-CV-305-XR, 2010 WL 5464824 (W.D. Tex. Dec. 30, 2010) (field service technicians);

[6] *E.g.*, *Jackson v. Synergies3 Tec Svcs., LLC*, No. 4:19-cv-00178-SRC, 2019 WL 5579514, at *7 (E.D. Mo. Oct. 29, 2019) (all satellite installation technicians); *Fontenot v. McNeil Industrial, Inc.*, No. 4:17-cv-3113, 2018 WL 5724863, at *4 (D. Neb. Sept. 19, 2018) (all welders); *rep. and rec. adopted by* 2018 WL 5724043 (D. Neb. Nov. 1, 2018); *Whitlow v. Crescent Consulting, LLC*, 322 F.R.D. 417, 423 (W.D. Okla. 2017) (all drilling consultants nationwide); *LeBlanc v. Halliburton Co.*, No. CV 17-0718 KG-GJF, 2018 WL 3999567 (D.N.M. Aug. 21, 2018) (all independent contractor directional drillers nationwide); *Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012, 1025 (S.D. Iowa 2016) (all delivery drivers across several states); *Verma v. 3001 Castor, Inc.*, No. CV 13-3034, 2016 WL 6962522, at *6 (E.D. Pa. Nov. 29, 2016) (exotic dancers); *Hodzic v. Fedex Package Sys., Inc.*, No. 15-956, 2016 WL 6248078, at *9 (W.D. Pa. Oct. 26, 2016) (delivery drivers); *Harrison v. DelGuerico's Wrecking & Salvage, Inc.*, 305 F.R.D. 85, 91 (E.D. Pa. 2015) (all non-exempt independent contractors); *Harris v. Express Courier Int'l, Inc.*, No. 5:16-cv-05033, 2016 WL 5030371, at *4 (W.D. Ark. Sept. 19, 2016) (all delivery drivers "throughout the Southeast"); *Geiger v. Z-Ultimate Self Defense Studios LLC*, C.A. No. 14-cv-00240-REB-NW, 2015 WL 1090181, at *3 (D. Colo. Mar. 10, 2015) (self-defense class instructors); *Ornelas v. Hooper Homes, Inc.*, No. 12-cv-3106 (JAP), 2014 WL 7051868, at *5 (D.N.J. Dec. 12, 2014) (paramedical exam providers); *May v. E & J Well Svc., Inc.* C.A. No. 14-cv-00121-RBJ, 2014 WL 2922655, at *3 (D. Colo. Jun. 27, 2014) (flow testers); *Scott v. Bimbo Bakeries, USA, Inc.* No. 10-3154, 2012 WL 645905, at *7 (W.D. Pa. Feb. 29, 2012) (delivery drivers), *abrogation on diff. grounds rec'g'd by Razak v. Uber Techs., Inc.*, No. 16-573, 2016 WL 5874822, at *9 (E.D. Pa. Oct. 7, 2016); *Putman v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264, 274 (S.D. Iowa 2011) (all satellite installation technicians); *Edwards v. Multiband Corp.*, Civ. No. 10-2826 (MJD/JJK), 2011 WL 117232, at *5 (D. Minn. Jan. 13, 2011) (all satellite technicians); *In re Penthouse Exec. Club Comp. Litig.*, 10 Civ. 1145(NRB), 2010 WL 4340255, at *3-4 (S.D.N.Y. Oct. 27, 2010) (exotic dancers); *McCaffrey v. Mortgage Sources, Corp.*, No. 08-2660-KHV, 2009 WL 2778085, at *4-5 (D. Kan. Aug. 27, 2009) (loan officers); *Labrie v. UPS Supply Chain Sols., Inc.*, No. C08-3182 PJH, 2009 WL 723599, at *5 (N.D. Cal. Mar. 18, 2009) (delivery drivers); *Gayle v. Harry's Nurses Registry, Inc.*, No. 07 Civ. 4672 (CPS)(MDG), 2009 WL 605790, at *9-10 (E.D.N.Y. Mar. 9, 2009) (nurses); *Wood v. Sundance Prof. Svcs., LLC*, No. 08-2391-JAR, 2009

true, and similar cases certifying collectives of all independent contractors remains good law after *Swales*.[7]

### 7.    Certification furthers the *Hoffman La-Roche* goal of judicial economy.

Under the FLSA, an employee may bring an action against an employer "[on] behalf of himself ... and other employees similarly situated." 29 U.S.C. § 216. ). "Section 216(b) collective actions are intended 'to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer.'" *Roussell v. Brinker Intern., Inc.*, 441 Fed. Appx. 222, 227 (5th Cir. 2011) (quoting *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 919 (5th Cir. 2008)). Unlike a Rule 23 class action, in which plaintiffs "opt out" of the class, an FLSA plaintiff must "opt in" to become part of the collective. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds*, *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

---

WL 484446, at *2 (D. Kan. Feb. 26, 2009) (construction workers); *Houston v. U.R.S. Corp.*, 591 F.Supp.2d 827, 833-34 (E.D. Va. 2008) (housing inspectors); *Quinteros v. Sparkle Cleaning, Inc.*, 532 F.Supp.2d 762, 772 (D. Md. 2008) (janitorial workers); *Lewis v. ASAP Land Exp., Inc.*, C.A. No. 07-2226-KHV, 2008 WL 2152049, at *1 (D. Kan. May 21, 2008) (delivery drivers); *Montoya v. S.C.C.P. Painting Contractors, Inc.*, Civ. No. CCB-07-455, 2008 WL 554114 (D. Md. Feb. 26, 2008) (house painters); *Lima v. Int'l Catastrophe Sols., Inc.*, 493 F.Supp.2d 793, 798-99 (E.D. La. 2007) (manual laborers); *Lemus v. Burnham Painting & Drywall Corp.*, No. 2:06-cv-01158, 2007 WL 1875539, at *4-5 (D. Nev. Jun. 25, 2007) (house painters); *Westfall v. Kendle Intern., CPU, LLC*, No. 1:05-cv-00118, 2007 WL 486606, at *8-9 (N.D. W.Va. Feb. 15, 2007) (house painters); *Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 198 (S.D.N.Y. 2006) (carpet installation mechanics).

[7] *E.g.*, *Lagunas v. La Ranchera, Inc.*, No. CV H-22-17, 2023 WL 5511198, at *1 (S.D. Tex. Aug. 25, 2023) (delivery drivers); *Clifton v. Famous Bourbon Mgmt. Grp., Inc.*, No. CV 20-2764, 2022 WL 22936958, at *5 (E.D. La. Dec. 6, 2022) (exotic dancers); *Rogers v. 12291 CBW, LLC*, No. 1:19-CV-00266, 2022 WL 19976339, at *13 (E.D. Tex. Mar. 31, 2022) (exotic dancers); *Marissa Torres, v. Chambers Protective Services, Inc.*, No. 5:20-CV-212-H, 2021 WL 3419705, at *12 (N.D. Tex. Aug. 5, 2021) (gate guards/attendants); *Sterling v. Greater Houston Transportation Co.*, No. CV H-20-910, 2021 WL 2954663, at *1 (S.D. Tex. July 14, 2021) (bus drivers).

In *Sperling v. Hoffman-La Roche*, 110 S. Ct. 482 (1989), the Supreme Court explained that collective actions permit "plaintiffs the advantage of lower individual costs to vindicate their rights by the pooling of resources.  The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged … activity." *Id*. at 485. A collective action is favored because it serves the legitimate goals of avoiding a multiplicity of duplicative lawsuits and expediting disposition of the action. *Id*.

As is the case here, the judicial system clearly benefits by the efficient resolution, in one proceeding, of common issues of law and fact arising from the same unlawful conduct. New Day's misclassification of home care workers as independent contractors and denial of overtime pay was uniform for all home care workers at New Day. It would burden the Court to resolve numerous cases addressing the same claims with the same facts and evidence. Moreover, the compensation paid to the putative collective members is also easily identified by the records.  Thus, a collective action is the ideal means to resolve the claims of the putative collective members.

### D.    NOTICE & CONSENT PROCEDURE

Plaintiffs seek to notify the following group of putative collective members:

> **All home care workers currently or formerly employed by, or working on behalf of, New Day Personal Care Services, Inc. who were paid "straight time for overtime" at any point from October 14, 2022, to the present.**

To facilitate the Notice process and preserve the rights of those who have not yet opted-in, Plaintiffs propose the attached Notice and Consent Forms for approval by the Court. *See* Ex. 1. Variations of the proposed Notice and Consent Forms have been adopted by courts in this District and districts throughout the United States. The same is true of Plaintiffs' proposed opt-in timeline. Their use is appropriate in this case.

**1.    The production of contact information is routine in FLSA collective actions.**

The Supreme Court acknowledged that, in order for employees to take advantage of the benefits of an FLSA collective action, they need to receive "accurate and timely notice" regarding the pending collective action. FLSA plaintiffs are "entitled to specific discovery to determine the names and addresses of the putative class members." *Hoffmann-LaRoche*, 493 U.S. 165, at 169.

Plaintiffs thus requests the Court order that New Day provides Collective Counsel with the names, last known home addresses, email addresses, and phone numbers for all the putative collective members Courts routinely require this information to facilitate the issuance of notice. *Fulton v. Bayou Well Svcs. LLC*, 208 F.Supp.3d 798, 803 (N.D. Tex. 2016); *see Hoffmann-LaRoche*, 493 U.S. 165, 170 ("The District Court was correct to permit discovery of the names and addresses …."); *see also*, *e.g.*, *Dyson v. Stuart Petrol. Testers, Inc.*, 308 F.R.D. 510, 517 (W..D. Tex. 2015) (ordering production of names, addresses, email addresses, and phone numbers); *Beall v. Tyler Techs., Inc.*, No. Civ. A. 2-08-CV-422, 2009 WL 3064689, at *1 (E.D. Tex. Sept. 23, 2009) (granting collective notice via email and compelling the employer to produce all email addresses, both personal and work); *Davis v. Westgate Planet Hollywood Las Vegas, LLC*, No. Civ. A. 2:08-CV-00722-RCJ-PAL, 2009 WL 102735, at * 15 (D. Nev. Jan. 12, 2009) (granting circulation of notice via U.S. mail and email); *Ortiz v. Rain King, Inc.,* C.A. 4:02-cv-04012, 2003 WL 23741409, at *1 (S.D. Tex. Mar. 10, 2003) (ordering the defendant to produce the names, addresses, and phone numbers of collective in a readable computer format)*; Alba*, 2002 WL 32639827, at *1 (ordering the defendant to produce the full name, last known address, telephone numbers, dates and location of employment for prior three years). "[I]t is entirely appropriate in the modern digital age to distribute notice by mail, email,

and text, because although people frequently move and change directions, they typically retain the same email addresses and phone numbers." *Belt v. P.F. Chang's China Bistro, Inc.*, No. 18 Civ. 3821, 2020 WL 3829026, at *9 (E.D. Pa. Jul. 8, 2020) (collecting cases); *see also McGhee v. TOMS King, LLC*, 2:19-cv-01470-RJC, 2021 WL 1176097, at *9 (W.D. Pa. Mar. 29, 2021) ("With respect to Plaintiffs' request to distribute notice via mail, e-mail, and text message, the Court finds these facilitative measures to be appropriate under the circumstances of this case.").

### 2.    Putative Collective Members should receive notice electronically.

Electronic notice should be issued to putative collective members with hyperlinks to a website dedicated to hosting the proposed Notice and Consent Form only. *Black v. Settlepou, P.C.*, No. 3:10-cv-1418-K, 2011 WL 609884, at *6 (N.D. Tex. Feb. 14, 2011) ("[Plaintiff]'s counsel is authorized to maintain an internet website for the purpose of informing similarly situated persons of their right to opt into this litigation."). "Opening a public website improves access to consent forms," and "[a]s with email, communication through websites is common." *Knox v. Jones Gp.*, 208 F.Supp.3d 954, 964 (S.D. Ind. 2016). The Court should permit email and text notice, and for Plaintiff to host a website for the proposed Notice and Consent Form. *White v. Integ. Elec. Techs., Inc.*, CA Nos. 11–2186, 12–359, 2013 WL 2903070, at *8 (W.D. La. Jun. 13, 2013) (permitting electronic signatures on consent forms from a dedicated website).

### 2.1.    Email notice should be provided to putative collective members.

Email notice has become an embraced form of notice in FLSA collective actions. *See Rodriguez v. Stage 3 Separation, LLC*, No. 5:14-cv-603-RP, ECF No. 57, at *2 (W.D. Tex. Mar. 16, 2015) (citing *Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2012 WL 6928101, at *5 n.9 (N.D. Tex. Nov. 29, 2012)); *Thompson v. Peak Energy Svcs. USA, Inc.*, No. 13-0266, 2013 WL

5511319, at *2 (W.D. Pa. Oct. 4, 2013)). One court explained, over a decade ago, that electronic notice should be the rule in providing collective notice:

> [I]n 2015 it should rarely be entertaining arguments about the appropriateness of email notice. Email is not the wave of the future; email is the wave of the last decade and a half. **Many people use their email address as their primary point of contact, and in almost every situation, more opt-in plaintiffs will be on notice of a pending collective action if the potential class members are also notified via email**.

*Stage 3 Separation*, No. 5:14-cv-603-RP, ECF No. 57, at *2 (emphasis added). Other courts have reached the same conclusion: "notice by e-mail will **more likely** reach potential class members than regular mail sent to the home address …." *Jaso v. Bulldog Conn. Specialists LLC*, No. 2:15-cv-269, ECF No. 17, at *12 (S.D. Tex. Oct. 15, 2015) (emphasis added).

### 2.2.    Text notice should be provided to putative collective members.

"[I]n the world of 20[26], email and cell phone numbers are a stable, if not primary, point of contact for the majority of the U.S. population, and thus [ ] using email and texts to notify potential [collective] members is entirely appropriate." *Vega v. Point Security, LLC*, No. A-17-CV-049-LY, 2017 WL 4023289, at *4 (W.D. Tex. Sept. 13, 2017), *rpt. and rec. adopted* 2017 WL 8774233 (Oct. 12, 2017). For this reason, "Multiple courts … have ordered the production of telephone numbers in [FLSA] cases." *Mahrous v. LKM Enterps., LLC*, C.A. No. 16-10141, 2017 WL 2730886, at *4 (E.D. La. Jun. 26, 2017) (citing *Jones v. Yale Enf't Servs., Inc.*, No. 14-2831, 2015 WL 3936135, at *3 (E.D. La. Jun. 26, 2015)); *Case v. Danos and Curole Marine Contrs., L.L.C.*, Nos. 14-2775, 14-2976, 2015 WL 1978653, at *8 (E.D. La. May 4, 2015); *White v. Integ. Elec. Techs., Inc.*, No. 11-2186, 12-359, 2013 WL 2930370, at *11 (E.D. La. Jun. 13, 2013)); *Dearmond v. Alliance Energy Servs., L.L.C.*, No. 17-2222, 2017 WL 3173553, at *3 (E.D. La. Jul. 25, 2017); *see also Escobar v. Rameilli Gp., L.L.C.*, No. 16-15848, 2017 WL 3024741, at *3 (E.D. La. Jul. 7, 2017) ("Courts have approved of the use of text messages

because it facilitates notice to class members who may have changed addresses before the opt-in period.").

## E.    CONCLUSION

Plaintiffs have met their burden to show that a group of similarly situated New Day home care workers were misclassified as independent contractors and denied overtime pay for hours worked over 40 in a week. Plaintiffs requests the Court grant this motion and approve the proposed Notice & Consent Form and opt-in procedures.

Respectfully submitted,

*/s/ Matthew S. Parmet*

By: _____

**Matthew S. Parmet**
LA Bar # 32855
**PARMET LAW PC**
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone  713 999 5200
matt@parmet.law

**Kenneth St. Pé**
Louisiana Bar Roll 22638
**ST. PÉ LAW**
700 St. John St., Ste. 401
Lafayette, LA 70501
Telephone: (337) 534-4043
Telecopier: (337) 534-8379
kds@stpelaw.com

**Attorneys for Plaintiffs**

## CERTIFICATE OF CONFERENCE

Prior to filing this motion, Plaintiffs' counsel conferred with Defendant's counsel. However, Defendant did not consent to collective certification.

*/s/ Matthew S. Parmet*

_____

Matthew S. Parmet